******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# SCLAFANI PROPERTIES, LLC *v.* SPORT-N-LIFE DISTRIBUTING, LLC, ET AL.
## (AC 40066)

Prescott, Bright and Bishop, Js.

### *Syllabus*

The plaintiff sought to recover damages from the defendants for breach of
a commercial lease, and the matter was referred for a hearing to an
attorney trial referee, who recommended judgment in favor of the plain-
tiff. In her report, the referee noted that the plaintiff had offered itemized
exhibits into evidence and testimony that the defendants had failed
to make certain rental payments, to pay real estate taxes and hazard
insurance premiums. The referee, however, concluded that the plaintiff
failed to provide evidence regarding the real estate taxes or insurance
premiums. The plaintiff filed an objection to the referee's report, which
the trial court denied, and, thereafter, the court rendered judgment for
the plaintiff in accordance with the referee's report. Subsequently, the
plaintiff filed a motion for attorney's fees, in which it sought $27,904.12.
The court granted the motion but awarded the plaintiff only $6391.63,
and the plaintiff appealed to this court. *Held*:

1. The trial court improperly accepted the attorney trial referee's findings
   of fact with respect to the unpaid real estate taxes and failed to include
   in its judgment an amount for unpaid real estate taxes; the record clearly
   reflected both testimonial and documentary evidence that supported
   the plaintiff's claim that the defendants owed unpaid real estate taxes.
2. The trial court abused its discretion in determining its award of attorney's
   fees on the basis of the amount of damages awarded to the plaintiff:
   using the amount in controversy in determining a reasonable award of
   attorney's fees is improper and the court indicated in its articulation
   that its award of attorney's fees was linked to the amount of damages
   awarded to the plaintiff, and, accordingly a new hearing to determine
   such fees was ordered.

Argued March 9—officially released June 23, 2020

### *Procedural History*

Action to recover damages for breach of a lease, and
for other relief, brought to the Superior Court in the
judicial district of Stamford-Norwalk, Housing Session,
where the matter was referred to an attorney trial ref-
eree, who filed a report recommending judgment in
favor of the plaintiff; thereafter, the court, *Rodriguez,
J.*, denied the plaintiff's objection to the acceptance
of the report and rendered judgment for the plaintiff;
subsequently, the court granted in part the plaintiff's
motion for attorney's fees, from which the plaintiff
appealed to this court. *Affirmed in part; reversed in
part; further proceedings.*

*Peter V. Lathouris*, with whom were *Victor Andreou*
and, on the brief, *Michael P. Longo, Jr.*, for the appel-
lant (plaintiff).

*Mario L. DeMarco*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Sclafani Properties, LLC, appeals from the judgment of the trial court awarding it damages and attorney's fees for the failure of the defendants, Sport-N-Life Distributing, LLC (lessee), and its president, Gilbert Beck (guarantor),[1] to pay amounts due to the plaintiff under a commercial lease for property located at 482 Glenbrook Road in Stamford (property). The plaintiff claims that the court (1) erred when it failed to include in its judgment for the plaintiff an amount for unpaid real estate taxes and (2) abused its discretion in awarding only $6391.63 in attorney's fees. We reverse in part the judgment and remand the matter to the trial court.

The record reflects the following undisputed facts and procedural history. On December 12, 2003, the plaintiff, as the landlord, and the defendants, as the tenant and guarantor respectively, entered into a written commercial lease (lease) for the property. The lease was modified by agreement on January 20, 2012, and the rent was set to $8500 per month beginning February 1, 2012. The lease also required the defendants to pay all real estate taxes and to keep the property properly insured.

During the term of the lease, as modified, the lessee defaulted on its obligations under the lease. Thereafter, on September 9, 2013, the plaintiff brought a complaint[2] against the lessee and the guarantor alleging, among other things, that the lessee had breached the lease by failing to make payments as required by the lease. The plaintiff sought payment of those amounts and reasonable attorney's fees as provided for in the lease. The plaintiff also sought a prejudgment remedy in the amount of $75,000. Its application for a prejudgment remedy was supported by the affidavit of Bruce Sclafani, the plaintiff's managing member. Sclafani averred that the defendants owed $17,000 for the unpaid July and August rent, $33,934.33 in unpaid real estate taxes, and $2266 in unpaid insurance premiums. Subsequently, the court granted a stipulated prejudgment remedy in the amount of $75,000. Once the pleadings were closed, the matter was referred by the trial court to an attorney trial referee for a hearing and report pursuant to the provisions of Practice Book § 19-2a. Thereafter, the attorney trial referee conducted an evidentiary hearing during which testimony was taken and documents were admitted into evidence. On February 26, 2016, the attorney trial referee filed her report pursuant to Practice Book § 19-8.

In her report, the attorney trial referee noted that the plaintiff had offered testimony that the defendants had failed to pay rent from August, 2013, through February, 2014, that the defendants had failed to pay the real estate taxes due in July, 2012, and January and July,

2013, in the amount of $33,934.33, and had failed to pay hazard insurance premiums in the amount of $2266. She noted, as well, that the plaintiff had testified that the defendants had caused damage to the property in the amount of $30,785.74. The defendants disputed that they had caused any damage to the property, but did not dispute the plaintiff's evidence of the unpaid taxes. Having acknowledged the plaintiff's testimony that the defendants failed to pay the real estate taxes amounting to $33,934.33 and hazard insurance premiums in the stated amount, the attorney trial referee nevertheless concluded in her report that the plaintiff had failed to provide any evidence regarding either the real estate taxes or insurance premiums.

The attorney trial referee recommended judgment enter for the plaintiff in the form of $51,000 for rent, less the security deposit of $15,000; $5535.74 for damages to the property; interest in the amount of $543.90; and taxable costs of the action; and she recommended that the court issue an award of attorney's fees in favor of the plaintiff.

Following the issuance of the report, the plaintiff filed an objection to the report and the entry of judgment in accordance with the attorney trial referee's recommendations. Specifically, the plaintiff alleged that the attorney trial referee erroneously had concluded that the plaintiff had failed to adduce evidence of the defendants' failure to pay real estate taxes or hazard insurance premiums as the transcript of the hearing, as well as documentary evidence submitted during the hearing, provided evidence contrary to the report. On July 28, 2016, the court denied the objection. The court rendered "[j]udgment for the plaintiff in the amount of $41,535.74 in damages[3] and $543.90 in interests and costs in the amount of $531.25, for a total of $42,610.89." Notably, the judgment included no provisions for real estate taxes or insurance payments.

On August 9, 2016, the plaintiff filed a motion for attorney's fees pursuant to Practice Book § 11-21 in the amount of $26,604.12.[4] With its motion, the plaintiff attached an affidavit and supporting invoices detailing the hours expended and the hourly rates charged for legal services. At the hearing on the plaintiff's motion, the plaintiff argued that the fees associated with this case were reasonable under the circumstances. In response, the defendants declined the opportunity to examine counsel as to the reasonableness of his hourly rate or the hours expended. In asking the court to order a reasonable amount of attorney's fees, the defendants' counsel claimed, without any supporting evidence, that the plaintiff had been overly litigious. The defendants' counsel asked the court to issue an order for fees commensurate with the underlying relief sought by the plaintiff and he sought the sympathy of the court.

On November 14, 2016, the court, *Rodriguez, J.*,

granted the plaintiff's motion for attorney's fees in the amount of $6391.63. The plaintiff moved for articulation with regard to the court's decision with regard to attorney's fees on November 21, 2016, which the court denied. This appeal followed and, thereafter, the plaintiff moved for articulation with regard to both the court's July 28, 2016 judgment and its November 14, 2016 decision as to attorney's fees. The court again denied the plaintiff's motion for articulation but this court ordered the court to provide such an articulation.[5] Additional facts will be set forth as necessary. At issue are whether the court abused its discretion in failing to make an award for unpaid real estate taxes and whether the court's award of attorney's fees was reasonable. We review each claim in turn.

I

The plaintiff claims that the trial court erred in rendering judgment for the plaintiff without awarding any damages related to the defendants' failure to pay the real estate taxes as required by the lease. More specifically, the plaintiff argues that the defendants made judicial admissions as to their liability for the taxes and, moreover, that the attorney trial referee's finding that there was no evidence of the defendants' failure to pay the taxes was clearly erroneous in light of the undisputed evidence of the defendants' liability and their failure to pay. We agree with the plaintiff's second argument.[6]

We begin with the relevant legal principles that guide our analysis of this claim. "It is axiomatic that [a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and [fact finders] share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gould* v. *Hall*, 64 Conn. App. 45, 49–50, 779 A.2d 208 (2001).

Furthermore, "it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function:

where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . .

"[Additionally], we note that, because the attorney [fact finder] does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney [fact finder] have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney fact finder], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Citation omitted; internal quotation marks omitted.) *Walpole Woodworkers, Inc.* v. *Manning*, 126 Conn. App. 94, 99, 11 A.3d 165 (2011), aff'd, 307 Conn. 582, 57 A.3d 730 (2012).

The following additional facts are relevant to our resolution of this claim. During the hearing before the attorney trial referee, the plaintiff elicited evidence from its managing member, Bruce Sclafani. He testified that the defendants did not meet their respective obligations under the lease and guarantee; specifically, that the defendants did not pay the real estate taxes, rent, and insurance. During direct examination, Sclafani confirmed the amounts due as set forth in the plaintiff's exhibit 4—plaintiff's statement of amount due—which provided an itemized list of the amounts outstanding, including the real estate taxes in the amount of $33,934.33. At one point during his direct examination, when Sclafani was asked by his counsel to read aloud from the exhibit the specific amounts listed, the defendants' counsel objected. He stated: "The document speaks for itself. I think it's in evidence. It's a—if we're talking about the plaintiff's statement of amount due." The court sustained this objection. Additionally, during cross-examination, counsel for the defendants presented Sclafani with defendants' exhibit A, which was the affidavit signed by Sclafani in conjunction with the plaintiff's application for a prejudgment remedy. This document purported to itemize amounts due, at that time, for rent, taxes, and insurance. During this cross-examination, the defendants' counsel elicited testimony from Sclafani that the exhibit entered on behalf of the defendants stated that the defendants owed real estate taxes in the amount of $33,934.33.[7] In response to that questioning, Sclafani confirmed that the information contained in defendants' exhibit A was correct. In short, at the defendants' prodding and in response to a document placed into evidence by the defendants, the plaintiff confirmed that the defendants owed $33,934.33 in

taxes.

Later, in closing arguments before the attorney trial referee, counsel for the defendants twice referred to defendants' exhibit A, Sclafani's affidavit of amounts due to the plaintiff at the time the prejudgment remedy application was filed, and asked the court to note that exhibit and to enter orders consistent with its contents. At one point, counsel sought to direct the court's attention to Sclafani's affidavit and later, in the same argument, counsel for the defendants asked the court to use Sclafani's affidavit to calculate damages and then to add to it amounts for rent due for the months the lessee occupied the premises after the date of Sclafani's affidavit. The only portion of the plaintiff's damages claim that the defendants disputed was that related to alleged physical damage caused to the property by the defendants, as to which, the defendants argued that there was insufficient evidence. Consequently, counsel argued that if he were correct about the plaintiff's failure to prove that the defendants caused physical damage to the property, "[t]hen my client owes the $53,000 stated in the affidavit, minus the $15,000 security [deposit]." There is no dispute that the $33,934.33 owed for the real estate taxes was included in Sclafani's affidavit to which counsel referred. In short, our review of the record of the hearing before the attorney trial referee reflects that the amount of taxes due to the plaintiff from the defendants was not only introduced into evidence but was undisputed by the defendants.[8]

Notwithstanding the testimony of Sclafani, the itemized exhibits admitted during the hearing, and the defendants' acknowledgement of this debt, the attorney trial referee concluded that the plaintiff failed to provide any evidence of the real estate taxes owed. When the trial court reviewed the attorney trial referee's report and the exhibits presented at trial, it accepted the findings in the report and rendered judgment in accordance with the recommendation of that report.

On the basis of our careful review of the record, we conclude that the decision of the trial court to accept the attorney trial referee's factual findings, with respect to the real estate taxes, was improper. Contrary to the attorney trial referee's factual findings, the record clearly reflects testimony and documentary evidence in support of the plaintiff's tax claim. Both the plaintiff and the defendants provided evidence, either through testimony or full exhibits, that the defendants were obligated to pay the taxes for the property, that the defendants failed to meet that obligation, and, as a result, the defendants then owed the plaintiff $33,934.33 in real estate taxes. Given that the defendants did not dispute the amount of the real estate taxes due to the plaintiff, and there was ample evidence to support the plaintiff's claim regarding taxes, the court should have added the undisputed amount of $33,934.33 to the dam-

ages it awarded the plaintiff.

## II

Next, the plaintiff claims that the trial court abused its discretion in awarding only $6391.63 in attorney's fees. More specifically, the plaintiff contends that the court considered only one factor in determining the award of attorney's fees, it did not determine a reasonable hourly rate or a reasonable number of hours expended upon litigation, and it improperly awarded attorney's fees based on the amount of damages awarded to the plaintiff.

"[T]he amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion: A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in cases of a clear abuse of discretion by the trier may we interfere. . . . The trier is always in a more advantageous position to evaluate the services of counsel than are we." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 258–59, 828 A.2d 64 (2003).

The trial court's exercise of discretion, however, is not unbounded as there are parameters for the court's reasonable exercise of its judgment. "[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors [outlined in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)]. . . . The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation." (Footnote omitted; internal quotation marks omitted.) *Carrillow* v. *Goldberg*, 141 Conn. App. 299, 317–18, 61 A.3d 1164 (2013).

"It is well established that a trial court calculating a reasonable attorney's fee makes its determination while considering the factors set forth under rule 1.5 (a) of the Rules of Professional Conduct.[9] . . . A court utilizing the factors of rule 1.5 (a) considers, [among other things], the time and labor spent by the attorneys, the novelty and complexity of the legal issues, fees customarily charged in the same locality for similar services, the lawyer's experience and ability, relevant time limitations, the magnitude of the case and the results obtained, the nature and length of the lawyer-client relationship, and whether the fee is fixed or contingent." (Citations omitted; footnote omitted; internal quotation

marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, supra, 265 Conn. 259; see also *Altschuler* v. *Mingrone*, 98 Conn. App. 777, 781, 911 A.2d 337 (2006), cert. denied, 281 Conn. 927, 918 A.2d 276 (2007); Rules of Professional Conduct 1.5. "[This] list of factors is not, however, exclusive. The court may assess the reasonableness of the fees requested using any number of factors . . . ." (Internal quotation marks omitted.) *Glastonbury* v. *Sakon*, 184 Conn. App. 385, 394, 194 A.3d 1277 (2018).

After the court rendered judgment for the plaintiff, it conducted a hearing regarding attorney's fees on October 13, 2016. During that hearing, the plaintiff's counsel submitted time sheets and affidavits in support of his argument that he was owed $27,904.12 in attorney's fees. Defense counsel declined the opportunity to examine the plaintiff's counsel and he made no argument that counsel's hourly rates were unreasonable. Rather, he argued, without any supporting evidence, that the plaintiff had been overly litigious and, as noted, he sought the court's sympathy on behalf of the defendant guarantor. Specifically, he claimed to the court that the plaintiff had sold the property at a windfall profit and that his client, the guarantor, on the other hand, had lost his business, was elderly, on a fixed income, and would have to pay the judgment by securing a reverse mortgage while trying to hold on to his home.[10]

Subsequent to the October 13, 2016 hearing, the court rendered judgment granting the plaintiff's motion for attorney's fees in the amount of $6391.63. Following an order from this court, Judge Rodriguez articulated that he awarded that amount because $27,904.12 was "excessive and unreasonable under the circumstances" and "[a]n attorney's fee award of $6391.63 is reasonable *based on the judgment of $41,535.74*." (Emphasis added.)

This court has "consider[ed] problematic [a] court's use of the amount in controversy as a gauge for the award of attorney's fees. This court previously has held that the consideration of the amount involved, isolated from all other factors, is an improper gauge for a reasonable award of attorney's fees." *Costanzo* v. *Mulshine*, 94 Conn. App. 655, 664, 893 A.2d 905, cert. denied, 279 Conn. 911, 902 A.2d 1070 (2006). Because the court indicated in its articulation that it tied its award of attorney's fees to the amount of the damages awarded to the plaintiff, we conclude that the amount awarded for attorney's fees must be vacated and a new hearing held.

The judgment is reversed with respect to the trial court's failure to award real estate taxes and with respect to its award of attorney's fees and the case is remanded with direction to award the plaintiff $33,934.33 for past due real estate taxes and to conduct

a hearing and issue a reasonable order for the payment of attorney's fees consistent with the requirements of law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Gilbert Beck, who is the president of Sport-N-Life Distributing, LLC, executed a personal guarantee in which he obligated himself to complete "prompt payment of all rent, and the performance of all the terms, covenants, and conditions provided in [the] [l]ease."

[2] The complaint contained two counts, one against the lessee for its failure to make payments as required by the lease and the second count against the guarantor for his failure to meet his obligations as the guarantor of the payments. Because, as a practical matter, their obligations were merged, we refer to them as the defendants without distinction.

[3] The court's award of damages corresponds to the attorney trial referee's recommendation ($51,000 minus $15,000 plus $5535.74 equals $41,535.74).

[4] During the hearing, the plaintiff provided the court with updated time sheets that reflected a new total of $27,904.12 in legal fees due to counsel for the plaintiff.

[5] Following the trial court's denial of the plaintiff's motion for articulation, the plaintiff filed an appeal with this court together with a motion to review the trial court's denial, pursuant to Practice Book § 66-6. This court granted the motion for review and ordered the trial court to "articulate (1) why it rendered judgment in favor of the defendants on the issue of real estate taxes and (2) why it only awarded the plaintiff $6391.63 in attorney's fees when the plaintiff sought $27,904.12 in such fees." Judge Rodriguez issued his articulation on November 30, 2018. The contents of that articulation will be addressed throughout this opinion.

[6] Because we reverse in part the judgment of the trial court and remand the case on the basis of the plaintiff's second argument, we need not address the first argument.

[7] It appears that the defendants offered this exhibit because it reflected a lower amount due for rent, a discrepancy that was resolved at trial once it became evident that the lessee had remained on the premises for additional months without paying rent.

[8] During oral argument before this court, counsel for the defendants acknowledged that the defendants owed real estate taxes in the amount claimed by the plaintiff.

[9] The criteria set forth in rule 1.5 (a) of the Rules of Professional Conduct parallel, in large part, those factors set forth in *Johnson* v. *Georgia Highway Express*, *Inc.*, supra, 488 F.2d 717–19, with the exception of two that are found in *Johnson* but not in rule 1.5 (a) of the Rules of Professional Conduct. Those two factors include the undesirability of the case and awards in similar cases.

[10] It is axiomatic that appeals to the sympathy of the court are not appropriate argument concerning an award of attorney's fees, and that the court is required to decide the plaintiff's entitlement to attorney's fees by dispassionately assessing the relevant facts in light of the legal criteria for such an award.